UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JODETTE RENEE DENNIS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>FRANK BISIGNANO,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:24-cv-01520-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 13, 15). |

   This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 9).

   Plaintiff presents the following issues:

   1. The ALJ's RFC determination is not supported by substantial evidence because he failed in his duty to complete the record and obtain an opinion of Plaintiff's mental RFC from a medical professional.

   2. The ALJ's RFC determination is unsupported by substantial evidence as he failed to properly assess the opinions of Plaintiff's treating provider, Dr. Do, in accordance with the prevailing rules and regulations.

1

(ECF No. 13, p. 3).

Having reviewed the record, the administrative transcript, the parties' briefs, and the applicable law, the Court finds as follows.

## I. ANALYSIS

### a. Whether the RFC determination was Supported by Substantial Evidence Without an Updated Medical Opinion

Plaintiff challenges the RFC formulated by the ALJ "the record before the ALJ contained no opinions of Plaintiff's functional limitations from a medical professional." (ECF No. 13, p.6).

In its response, the Commissioner argues that the ALJ properly considered the evidence and reached a reasonable conclusion regarding Plaintiff's mental limitations. (ECF No. 15, p. 4).

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). The ALJ has a duty to develop the record "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).

The ALJ, not a doctor, "is responsible for assessing" a claimant's RFC. 20 C.F.R. § 416.946(c) ("the administrative law judge . . . is responsible for assessing your residual functional capacity"). An ALJ is presumed "capable of independently reviewing and forming conclusions about medical evidence." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). *See also Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021) (unpublished) ("ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination.").

In reviewing findings of fact with respect to RFC assessments, the Court determines

whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence is "an extremely deferential standard." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021). "It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

Plaintiff argues that the ALJ's RFC was not supported by substantial evidence because the ALJ did not have an updated medical opinion that would explain "how Plaintiff's unique impairments resulted in functional limitations" (ECF No. 13, p.7). Furthermore, Plaintiff contends that the ALJ was not qualified to draw conclusions from the medical evidence in the record when determining Plaintiff's mental functional limitations by focusing on the lack of objective findings in the record because the Plaintiff's mental illness "did not lend itself to such findings. (ECF No. 13, pp. 6-7).

As described above, the ALJ may draw certain conclusions from the medical evidence without obtaining a medical opinion. Moreover, Plaintiff has not shown that the ALJ required a medical opinion to interpret the medical evidence presented. For example, the ALJ reviewed the following clinical observations about Plaintiff's mood and affect, which did not require a medical opinion to interpret:

> [T]he objective clinical evidence shows treatment providers have regularly observed the claimant to present as a cooperative individual with a euthymic mood and affect, which is consistent with an individual capable of engaging in occasional interaction with the general public, co-workers, and supervisors (Exhibits B-5F, 4, 7, 10, 21; B7F, 22; B-19F, 3, 6, 8, 10, 14, 19, 28). Furthermore, the claimant has never been fired from a job due to having problems getting along with others in the workplace, and she reported getting along "just fine" with persons in positions of authority, such as supervisors and bosses (Exhibit B-12E, 6). And, even during office visits during which the claimant has displayed a guarded, worried, sad, and depressed mood and affect, treatment providers noted the claimant was nevertheless cooperative, appropriate, and established good rapport with her provider (Exhibit B5F, 18-21).

(A.R. 31 citing A.R. 514, 636, 639, 642, ,650 651, 652, 653, 814, 1023, 1026, 1028, 1030, 1034, 1039, 1048). Similarly, the ALJ reviewed the descriptions of Plaintiff by treatment providers,

which were consistent with the RFC and did not require a medical opinion to understand:

> [T]he medical evidence shows treatment providers describe the claimant as an "attentive," alert, and oriented individual with normal concentration abilities (Exhibits B-5F/, 4, 21; B- 7F, 20-22; B-19F, 11). The medical evidence from the period at issue further shows treatment providers have regularly observed the claimant to exhibit logical and goal-directed thought processes (Exhibits B-5F, 4, 7, 10, 21; B-7F, 22; B-10F, 11, 20, 23, 27, 30; B-19F, 3, 6, 8, 10, 14, 19, 28). Further, treatment notes from 2023 and 2024, show that the claimant continued to have mental health stability with medication management (Exhibit B-23F). As such, the substantial evidence is consistent with an individual capable of sustaining sufficient attention to persist at simple tasks throughout the day provided there are no strict time deadlines or high quota demands.

(A.R. 32, citing A.R. 636, 639, 642, 653, 812-814, 843, 852, 855, 859, 862, 1023, 1026, 1028, 1030, 1031,1034, 1039, 1048, 1201-1256).

The ALJ also relied on descriptions of Plaintiff's activities, which similarly did not require a medical opinion to understand:

> Despite her allegations, the claimant admitted in her disability filings that she is capable of performing a variety of daily tasks that require one to understand, remember, and apply learned information, such as operating a motor vehicle to navigate public roadways in order to shop for necessities in stores, pay bills, and prepare simple meals (Exhibit B-12E). At the hearing the claimant similarly admitted that since her alleged onset date, she helped care for her uncle until he passed away in 2023. She admitted that she could cook meals, clean windows, vacuum, and empty the trash. She stated that she watches shows during the day, takes care of plants, cares for animals, shops in stores, cooks, dinner, and attends church. The claimant's admissions and reported activities demonstrate the claimant was and is less limited than she alleged.

(A.R. 30).

Notably, although Plaintiff cites cases for the proposition that "an ALJ, as a layperson, is not qualified to interpret raw data in a medical record," Plaintiff does not point to any specific raw data that it believes required a medical opinion to interpret.

Additionally, the ALJ reviewed the medical opinions from prior administrative findings, as follows:

> At the initial state agency level, in April 2019, Anna Franco, Psy.D., found the claimant had non- severe depression and PTSD because the medical evidence established no limitations understanding, remembering, and applying information, mild limitations interacting with others, mild limitations concentrating, persisting, or maintaining pace, and mild limitations adapting and managing themselves (Exhibits B-A3). W. Jackson, M.D., found the claimant had severe degenerative disc disease and hypertension that limited her to the performance of medium work with frequent stooping and crouching, and occasional climbing of ladders, ropes, or scaffolds (Exhibit B-3A). At the state agency

reconsideration level, in October 2020, Michael D'Adama, Ph.D., and J. Linder, M.D., agreed with and affirmed the medical findings and determinations below in full (Exhibit B-5A).

(A.R. 32). Although the ALJ found these opinions to be only somewhat persuasive for the reasons set forth in the opinion, they did provide another source of medical opinion evidence in the record.

Accordingly, the Court finds the ALJ's RFC is supported by substantial evidence even without an updated medical opinion regarding Plaintiff's functional limitations.

### b. Whether the ALJ properly evaluated the opinion evidence of Dr. Do

Plaintiff next argues that the ALJ failed to properly assess the opinion of Plaintiff's treating provider, Dr. Do, and as a result the RFC determination is unsupported by substantial evidence. (ECF No. 13, p.7).

Plaintiff applied for benefits in January 2020, so certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (A.R. 17). These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b). Moreover, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). In conjunction with this requirement, "[t]he agency must 'articulate . . .. how persuasive' it finds 'all the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

The ALJ addressed Dr. Do's opinion in the following section:

> In a July 2021 physical medical source statement, Nhan Do., M.D., opined the claimant is limited to performing less than the full range of sedentary work, including standing/walking for less than 2 hours total during 8-hour workday, sitting for about 2 hours total during an 8-hour workday, and would miss 3 days of work per month (Exhibit B-21F). Dr. Do's opinions are minimally persuasive, in part because Dr. Do did not provide any objective support for his various opinion statements. Furthermore, at the time Dr. Do rendered those opinions, he had a limited treatment relationship consisting of only 3 telephonic office visits, and Dr. Do's clinic notes do not lend any objective clinical support for his opinion statements. Furthermore, Dr. Do's opinions are inconsistent with exam findings from other providers describing the claimant as an individual who displays grossly intact neurological functioning, full 5/5 motor strength, and full range of motion with the extremities (Exhibit B-6F, 5, 10, 14, 18, 23, 28, 31, 34, 37, 41, 45, 49, 52). For these reasons, Dr. Do's opinions are minimally persuasive.

(A.R. 33).

As an initial matter, the ALJ properly addressed how it considered the supportability and consistency factors when assessing the persuasiveness of Dr. Do's opinion.  The ALJ addressed the support for Dr. Do's opinions, including the limited treating relationship with Plaintiff and lack of objective clinical support.  The ALJ also addressed the consistency between Dr. Do's opinions and exam findings from other providers.

Plaintiff challenges one part of this opinion by claiming that Dr. Do specifically provided objective support for his assessment of the Plaintiff, noting that Plaintiff had a "prominence of fingers joints with bony deformities and a history of orthopedic conditions contributing to her current physical limitations." (*Id.*).

However, as the Commissioner points out, "bony deformities in Plaintiff's finger joints was not relevant to Dr. Do's opinion that Plaintiff had significant limitations in sitting, standing, and walking."  (ECF No. 15, at p. 6).  The Court also agrees with the Commissioner that merely noting that Plaintiff has a history of orthopedic conditions does not constitute objective clinical support for Dr. Do's conclusions.  (ECF No. 15, at p. 6).

Plaintiff next argues that Dr. Do's three telephonic visits were still more than the state agency consultants, who did not examine Plaintiff.  (ECF No. 13, at p.8-9).  However, it was reasonable for the ALJ to consider this limited contact with Plaintiff in assessing Dr. Do's opinion, among other reasons, especially where that opinion was inconsistent with other exam findings.

Plaintiff also argues that Dr. Do's opinion was consistent with medical records dated from 2021-2023 that were not cited by the ALJ. (ECF No. 13, at p. 9). However, the Court need not reweigh the medical evidence, especially where Dr. Do's opinion does not cite to or rely on any specific document in his medical source statement. Moreover, elsewhere the ALJ discusses the later treatment notes that Plaintiff contends the ALJ should have addressed:

> However, physical exam findings show treatment providers have observed the claimant to present as an alert and oriented individual who displays grossly intact neurological functioning, full 5/5 motor strength, and full range of motion with the extremities (Exhibits B-6F, 5, 10, 14,18, 23, 28, 31, 34, 37, 41, 45, 49, 52; B-17F; B-18F; B-19F). Treatment notes in 2023 show infrequent complaints, but a finding of COPD in December 2023, as the claimant had moderate emphysematous changes (Exhibit B-22F).

(A.R. 31).

Accordingly, the Court finds that the RFC determination was supported by substantial evidence and the ALJ did not err in its determination of the persuasiveness of Dr. Do's opinion.

## II. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated: **September 29, 2025**          /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE